[Docket Nos. 23, 27]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| KN ELECTRICAL CONTRACTOR, INC., d/b/a KN ELECTRICAL, and DENNIS KLEINER,<br><br>          Plaintiffs,<br><br>     v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 351, DANIEL COSNER, JOHN GRAY, ROY FOSTER, CHARLES DELLA VECCHIA, RYCK SIGNOR, HUGHES ELECTRIC COMPANY, LLC, ABC CORPS., I-X (said name being fictitious, true name presently unknown), and JOHN DOES I-X (said name being fictitious, true name presently unknown),<br><br>          Defendants. | Civil No. 21-20650 (RMB/MJS)<br><br><br>**OPINION** |

**APPEARANCES**
STEVENS & LEE, P.C.
Ryan P. Mulvaney, Esq.
Stephanie Lopez, Esq.
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407

     *On behalf of Plaintiffs*

O'BRIEN, BELLAND & BUSHINSKY, LLC
Mark E. Belland, Esq.
David F. Watkins Jr., Esq.
Matthew B. Madsen, Esq.
509 S. Lenola Rd., Building 6
Moorestown, New Jersey 08057

*On behalf of Union Defendants*

GRIMLEY LAW
James P. Grimley, Esq.
22 North Shore Road
Absecon, New Jersey 08201

*On behalf of Hughes Electric Company, LLC*

**BUMB, U.S. District Judge**

This case comes before the Court upon the Motion to Remand by Plaintiffs. [Docket No. 23.] Defendants removed this case from New Jersey Superior Court, Atlantic County, asserting that Section 301 of the Labor Management Relations Act of 1947 ("LMRA") and Sections 502 and 514 of the Employee Retirement Income Act of 1974 ("ERISA") preempt Plaintiffs' claims. Plaintiffs moved to remand the case, arguing that federal law is not implicated by any of their narrowly-pled claims, each of which arises under the authority of state law. Having reviewed the filings submitted by the parties, the Court finds that Plaintiffs' Motion to Remand [Docket No. 23] shall be GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. Plaintiffs' State Court Complaint**

On November 15, 2021, Plaintiffs KN Electrical Contractor, Inc. ("KN Electrical") and Dennis Kleiner ("Kleiner," together with KN Electrical, "Plaintiffs") filed a five-count complaint against Defendants International Brotherhood of Electrical Workers, Local Union 351, and union officials Daniel Cosner, John Gray, Roy Foster, Charles Della Vecchia, and Ryck Signor (collectively, "Union

Defendants") in the Superior Court of New Jersey, Atlantic County. [Docket No. 1-2 (hereafter, "Complaint").] Plaintiffs assert the following causes of action in the Complaint: tortious interference with contractual relations (Count I by KN Electrical against all Defendants); tortious interference with prospective economic advantages (Count II by KN Electrical against all Defendants; Count III by Kleiner against Union Defendants); defamation (Count IV by all Plaintiffs against Union Defendants); and trade libel (Count V by KN Electrical against Union Defendants). [*Id.*]

Plaintiff KN Electrical is a commercial and residential electrical contractor. [*Id.* ¶ 1.] Kleiner is its Vice-President and a licensed electrician. [*Id.* ¶ 21.] Defendant Hughes Electric is also an electrical contractor that directly competes with Plaintiffs' business. [*Id.* ¶ 2.] In the Complaint, Plaintiffs allege that Union Defendants repeatedly discouraged third parties from hiring or working with Plaintiffs. [*Id.* ¶¶ 19, 23–24, 42–44, 51–53, 61–68.] Plaintiffs allege that Union Defendants maliciously, and without privilege, campaigned against Plaintiffs with a defamatory and libelous misrepresentations and falsities, published to other contractors, Local 351 members, prospective employers, and Plaintiffs' employees, regarding their professional capabilities, and quality of their work. [*Id.* ¶¶ 19, 43, 61, 62.] Plaintiffs further claim that Union Defendants maligned KN Electrical as having failed to pay wage and benefit contributions to its employees with the purpose and object to tarnish KN Electrical's reputation, to induce current and prospective KN Electrical workers to

3

cease employment with KN Electrical, and to inhibit KN Electrical's ability to obtain and perform work. [*Id.* ¶ 63.]

Moreover, Plaintiffs claim that Union Defendants made derogatory and false statements to Kleiner's prospective employer resulting in the withdrawal of an employment offer. [*Id.* ¶¶ 66–71.] Plaintiffs also allege that Union Defendants actively interfered with and manipulated the bidding procurement process to undermine KN Electrical's bid and chances of being awarded certain contracts. [*Id.* ¶ 20.] Union Defendants allegedly disclosed KN Electrical's bid on municipal projects to a direct competitor, Hughes Electric, persuaded a general contractor to replace KN Electrical with Hughes Electric, and berated and intimidated KN Electrical's project manager into resigning from a project. [*Id.* ¶¶ 33–60.]

In sum, Plaintiffs' claims stem from allegations that that Union Defendants disrupted their actual and prospective contractual relationships "in providing color to Hughes Electric during the bidding procurement process, actively lobbying and presenting Hughes Electric as a better and cheaper alternative to other contractors, berating KN Electrical's project manager into withdrawing from KN Electrical's project and contacting and making defamatory statements to Kleiner's prospective employer." [Docket No. 23-1 (hereafter, "Plaintiffs' Brief"), at 15–16.]

### B. Removal to Federal Court

On December 21, 2021, Union Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, seeking to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331. [Docket No. 1.] On January 7, 2022, Union

Defendants filed a letter requesting leave to file a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. [Docket No. 4.] On January 21, 2022, counsel for Hughes Electric entered an appearance and filed two written correspondences advising the Court that it joins in Union Defendants' request for leave to file a motion to dismiss [Docket No. 9] and that it consents to removal [Docket No. 10]. Also, on January 28, 2022, Hughes Electric filed two more notices further advising the Court that Hughes Electric consents to removal and that it "provided consent to co-defendant International Brotherhood of Electrical Workers, Local Union No. 35 *prior* to their application for removal being filed." [Docket Nos. 11, 12 (emphasis in original).]

On March 1, 2022, the Court held a premotion conference with the parties pursuant to its Individual Rules and Procedures. [Docket Nos. 20, 21.] Thereafter, on March 14, 2022, the Court granted leave for Plaintiffs to file the present motion. [Docket No. 23.] Then, on April 18, 2022, Union Defendants submitted a letter to the Court motioning for leave to file a sur-reply in support of opposition to Plaintiffs' motion to remand. [Docket No. 27-3.] Union Defendants assert that Plaintiffs' request to strike certain exhibits and materials in its reply warrants a sur-reply.[1] [*See* Docket No. 29.]

---

[1] As a threshold matter, the Court must decide whether to grant Union Defendants' Motion for Leave to File Surreply. [Docket No. 27.] In the District of New Jersey, a surreply can be filed only with leave of the Court and at the Court's discretion. L. Civ. R. 7.1(d)(6). A surreply brief may be permitted by the Court to respond to new arguments raised in a reply brief. *See Smithkline Beecham PLC v. Teva Pharm. U.S., Inc.*, Civ. A. Nos. 04-0215, 55, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007); *see also*

## III.  STANDARD OF REVIEW

A claim arises under federal law where the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Nevertheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Union Defendants assert federal question jurisdiction as the basis of removal. As the removing parties, Union Defendants bear the burden of demonstrating that the case is properly before the federal court. *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995). The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

---

*Raube v. X–L Specialized Trailers, Inc.*, Civ. No. 06-4628(NLH), 2008 WL 11384153, at *5 n. 6 (D.N.J. Apr. 10, 2008) (explaining that "[a]lthough it is within the Court's discretion to disregard impermissibly filed sur-replies, we allow it in this instance because plaintiff is attempting to address arguments raised in defendant's reply") (internal citation omitted). The Court finds that Union Defendants moved to file a sur-reply, not to respond to any new arguments raised in Plaintiffs' reply brief, but rather, to attempt to recharacterize the applicable law at issue in the Court's remand analysis. The Court denies Union Defendants' request for leave to file a surreply.

complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)). "It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case." *Glenmede Tr. Col v. Dow Chem. Co.*, 384 F.Supp. 423, 433–34 (E.D. Pa. 1974).

## IV. LEGAL ANALYSIS

### A. Removal Was Procedurally Proper

As an initial matter, the Court must determine whether removal was procedurally proper. When a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action" within thirty days after service. 28 U.S.C. § 1446(b)(2)(A), (B). Here, Plaintiffs argue that Hughes Electric's failure to confirm consent to removal within the thirty-day period after Defendants filed the Notice of Removal is an incurable procedural defect that bars removal. [*See* Docket No. 26.] However, courts in this district have allowed parties to consent to removal even after the removal period has ended so long as the delay in obtaining consent is not egregiously late and there is sufficient indication that consent has been provided. *Michalak v. ServPro Indus., Inc.*, No. CV 18-1727 (RBK/KMW), 2018 WL 3122327, at *5 (D.N.J. June 26, 2018)

(explaining that the court "refrain[ed] from applying the standard in a hyper-technical and unrealistic manner"); *Canon Fin. Servs., Inc. v. Kalmus*, No. 119CV20919NLHKMW, 2020 WL 4333744, at *3 (D.N.J. July 28, 2020) (holding that remand on the basis for failure to obtain consent was unwarranted when codefendants provided clear notice of their consent days after plaintiff suggested lack of clarity on the issue).

Here, Hughes Electric confirmed its consent to removal multiple times on the docket, and expressly clarified that it consented to removal prior to Union Defendants' application for removal. [Docket. No. 12.] Furthermore, Hughes Electric's initial written correspondence confirming that it consented to removal was filed only thirty-one days after Union Defendants filed the Notice of Removal. [Docket Nos. 1, 10.] The Court is satisfied that the timing of Hughes Electric's consent was not egregiously late after the Notice for Removal was filed. Plus, Hughes Electric unambiguously expressed to the Court that it consented to removal at the outset, and the Court is mindful of Hughes Electric's efforts to clarify to the Court when it consented to removal—a representation the Court fully expects to have been in good faith. Thus, the Court is satisfied that the Defendants have met the procedural requirements for removal.

### B. Removal Was Substantively Improper Because Plaintiffs' Claims Are Not Preempted by Federal Law

In certain cases, a complaint that presents only state-law claims and no other basis for federal jurisdiction may nonetheless be removed to federal court pursuant to

the doctrine of complete preemption. *See Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). Complete preemption "recognizes that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Pascack*, 388 F.3d at 399 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). However, the Court is not satisfied that Plaintiffs' narrowly-pled claims in this action concern any such area of federal law.

### 1.  The LMRA Does Not Preempt Plaintiffs' Claims

### A. Section 301 of the LMRA

Section 301 of the LMRA does not completely preempt Plaintiffs' claims as none of the state-law claims are so inextricably intertwined with the collective bargaining agreement ("CBA") between the Southern Division of the Southern New Jersey Chapter, Inc., National Electrical Contractors Association and Local Union 351, International Brotherhood of Electrical Workers. [*See* Docket No. 1-4.] In other words, to decide Plaintiffs' claims, the Court need not interpret any parties' rights created by the CBA, or substantially dependent, on the CBA. Section 301 gives federal courts the exclusive jurisdiction to hear "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Section 301 also preempts claims that involve rights granted to employees created by a CBA or rights that are "substantially dependent" on a CBA. *Caterpillar Inc.*, 482 U.S. at 491;

*Rutledge v. Intl Longshoremens Assn AFL-CIO*, 701 F. Appx 156, 160 (3d Cir. 2017). A state-law claim is also preempted by Section 301 of the LMRA if it is so "inextricably intertwined" with the terms of a labor contract that its resolution requires judicial interpretation of those terms. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985).

However, state-law claims with no other relationship to a CBA beyond the fact that they are asserted by an individual covered by a CBA are not preempted by Section 301. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 25 (1983) (explaining that "…we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section.") Where a claim only tangentially involves a provision of the CBA, the state-law claim is not preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). If the rights created by state law can be enforced without resorting to the interpretation of terms of a labor contract, Section 301 does not preempt a claim based on those rights. *See Caterpillar*, 482 U.S. at 391.

Here, the Court finds that resolution of Plaintiffs' claims does not require the Court to construe any particular term of the applicable CBA. At best, Plaintiffs' claims only tangentially relate to the subject matter discussed in the CBA. Union Defendants argue that all of Plaintiffs' state-law claims are completely preempted by the LMRA § 301 such that they may properly be removed to federal court. First, Plaintiffs' tortious interference, defamation, and trade libel claims are based on rights created by New Jersey tort law, not the CBA. In addition, Union Defendants refer to

large sections of the CBA and quote portions that are only tangentially related to the claims or go beyond Plaintiffs' Complaint completely.

Specifically, Union Defendants assert that Plaintiffs' Complaint alleges breaches of Articles II and IV of the CBA, which comprises approximately thirteen single-spaced pages of complex provisions in the CBA. [Docket Nos. 1 ¶¶ 11–12, 1–4.] Union Defendants maintain that the tortious interference with contractual relations claim is based upon the allegation that Union Defendants "wrongfully refused to provide appropriate manpower," and impeded its efforts to timely complete work on various projects. [Docket No. 24, at 17–19.] Furthermore, Union Defendants broadly assert that the obligation to provide manpower is founded upon the rights and obligations created in the CBA. [*Id.*]

As to the tortious interference with prospective economic advantage claim, Union Defendants broadly cite to referral procedures in the CBA that are allegedly relevant to Kleiner. [*Id.* at 20–21.] While Union Defendants can point to large portions of Article IV referral procedures, it fails to demonstrate that resolution of Plaintiffs' tortious interference claims is substantially dependent upon those terms or require the Court's interpretation of any such contractual provision. The tortious interference claims are based on the actual and prospective contractual relations that Union Defendants allegedly interfered with when it disclosed KN Electric's bid to Hughes Electric, berated KN Electrical project manager to withdrawal from the KN Electrical's project, and misrepresented Plaintiffs. Plaintiffs' central contention is not

over the precise terms of the bidding process, referral procedure, or "manpower" provided. [Docket No. 24, at 23–26.]

Furthermore, Union Defendants argue that Plaintiffs' claims of defamation and trade libel require an analysis of the CBA and allege breaches of the CBA. Specifically, Union Defendants contend that Articles VI through VIII of the CBA contain several provisions providing that an employer will "contribute a percentage of the gross monthly payroll for all employees to [specific IBEW Local 351 Funds] as outlined on the current wage sheet" and define "gross labor payroll". [Docket No. 24, at 28.] Union Defendants do not identify any specific provisions that have anything to do with Kleiner's ability to acquire a job or Union Defendants right to defame Plaintiffs. Broadly reciting large sections of the CBA or tangentially related terminology from the CBA will not suffice.

In determining whether Plaintiffs' claims are preempted by Section 301, *Hudson Yards*, a case that dealt with similar tortious interference claims related to third-party contractual relationships, is fairly instructive. *See Hudson Yards Constr. LLC v. Bldg. & Constr. Trades Council of Greater N.Y.,* No. 1:18-CV-2376-GHW, 2019 WL 233609 at *3-4 (S.D.N.Y. Jan. 15, 2019). In *Hudson Yards*, as is the case here, "none of the allegedly defamatory statements [made by Union Defendants] even mentions the [CBA]." *Hudson Yards Constr. LLC*, 2019 WL 233609 at *4. Moreover, the defendants in *Hudson Yards* comparably failed "to demonstrate that in order to determine the defamatory nature of the conduct alleged, that any provision of the [CBA] would need to be interpreted, much less that the defamation claim is

12

somehow 'substantially dependent' on the terms of the [CBA]." *Id.* Thus, Section 301 similarly does not completely preempt any of Plaintiffs' state-law claims. The Court is easily able to discern from the face of the Complaint that all of the state-law claims asserted therein are narrowly drafted and do not require the interpretation of any particular contractual language or provision of the applicable CBA. Union Defendants are not able to amend the Complaint to change this or assert new causes of action against themselves not pled in the Complaint.

Simply put, Plaintiffs are the master of their complaint, and the Court rejects Union Defendants' convoluted argument attempting to broaden Plaintiffs' state-law tort claims, none of which require the Court to interpret any specific provision in the CBA. Union Defendants' inability to point to any disputed contractual provision in the CBA requiring this Court's interpretation is fatal to their argument that Section 301 of the LMRA preempts any of Plaintiffs' claims.

## B. Section 303 of the LMRA

In its opposition brief, Union Defendants allege other bases for removal not included in the Notice of Removal, one of which being Section 303 of the LMRA. [*Id.*, at 25–28.] Plaintiffs maintain that Union Defendants improperly raise this as a new basis for removal since Union Defendants did not identify it as a basis for federal jurisdiction in its Notice of Removal. [Docket No. 26, at 7–8.]

A notice of removal may be freely amended within the thirty-day period for removal. *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.13 (3d Cir. 2003); 28 U.S.C. § 1446(b). Thereafter, the time to substantively amend the notice of removal

and assert a new independent jurisdictional basis will lapse. *Gosch v. Int'l Chapter of Horseshoers & Equine Trades*, 200 F.Supp.3d 484, 494-95 (M.D. Pa. 2016) (denying new grounds for federal jurisdiction and holding that "the Court will not consider either proposition although they were raised and addressed in the parties' briefs regarding Plaintiff's motion to remand"); *Brown v. Rite Aid Corp.*, 415 F.Supp.3d 588, 591 (E.D. Pa. 2019) ("a party may not raise a new and independent ground for removal after the 30-day time limit expires"); *Akins v. Radiator Specialty Co.*, Civ. No. A. 3:05-45(KRG), 2006 WL 2850444, at *2 (W.D. Pa. Sept. 29, 2006) (holding that a new additional basis for jurisdiction in defendants' response may not be considered an amendment of the notice of removal).

Union Defendants do not attempt to correct mere technical defects in its Notice of Removal, but instead propose a brand-new substantive basis for federal question jurisdiction in their opposition brief. At no time did Union Defendants amend or request the Court's leave to amend the Notice of Removal. As such, the Court need not address Union Defendants' preemption argument under Section 303. Nevertheless, even if the Court were to address the new basis of removal, the Court finds that Section 303 is also not a proper basis for it to invoke federal question jurisdiction of Plaintiffs' claims. Courts have held that purported violations of Section 303 may be subject to the complete preemption doctrine and support removal. *See, e.g., Smart v. Local 702, Int'l Bhd. Of Elec. Workers,* 562 F.3d 798, 808 (7th Cir. 2008); *Silverman v. Verrelli,* Civ. No. 11–6576(SRC), 2012 WL 395665, at *7

(D.N.J. Feb. 7, 2012); *Allstate Interiors Inc. v. Carpenters,* Civ. No. 10–2861(RWS), 2010 WL 3894915, at *2 (S.D.N.Y. Sept. 10, 2010).

Section 303 creates a private cause of action that may be brought by any person injured in his business or property as a result of a labor union's unfair labor practices as defined by Section 8(b)(4) of the NLRA, which, identifies various activities that constitute an unlawful "secondary boycott," specifically prohibiting a labor union from threatening, coercing, or restraining a person engaged in commerce or in an industry affecting commerce with the object of forcing that person to cease doing business with another. 29 U.S.C. § 187; 29 U.S.C. § 158(b)(4)(ii)(B); *NLRB v. Retail Store Emp. Union, Local 1001,* 447 U.S. 607, 611–12 (1980). This conduct is known as an unlawful "secondary boycott" because it is not aimed at the employer of the subject union's members (*i.e.*, the primary employer), but rather, at a secondary employer. *Silverman*, 2012 WL 395665, at *3. "The gravamen of a secondary boycott … is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop busin'ss with the employer in the hope that this will induce the employer to give in to his employ'es' demands." *'nt'l Bhd. of Elec. Workers v. NLRB*, 181 F.2d 34, 37 (2d Cir. 1950). "[N]eutral parties [are] 'the helpless victims of quarrels that do not concern them at all.'" *'nt'l Longshore'en's 'ss'n, AFL-CIO v. Allied 'nt'l, Inc.*, 456 U.S. 212, 225 (1982) (citations omitted).

Union Defendants contend that Plaintiffs' claims of tortious interference with contractual rights and tortious interference with prospective economic activity should

be construed as a claim that Union Defendants engaged in secondary boycott activity and, thus, are preempted by federal labor law. [Docket No. 24, at 33.] However, Plaintiffs have intentionally crafted these claims to sound in state tort law alone. The Court also finds that none of Plaintiffs' claims allege a vital aspect of secondary boycott activity as defined by federal labor law: the forced demands behind the union's purpose for the alleged conduct. In other words, an important piece of the puzzle is missing from the face of Plaintiffs' Complaint because the alleged misrepresentations made by Defendants were aimed directly at Plaintiffs and the intended "sanctions" from those alleged misrepresentations were to bear directly on Plaintiffs' business, not some other neutral party. Thus, Union Defendants' argument that Section 303 of the LMRA is a basis for removal is both procedurally and substantively misplaced.

### 2. ERISA Does Not Preempt Plaintiffs' Claims

Union Defendants' final argument for removal concerns Sections 502 and 514 of ERISA. Congress enacted ERISA to comprehensively regulate employee welfare benefit plans that "through the purchase of insurance or otherwise, [provide] medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment..." 29 U.S.C. § 1002(1). "[I]t is important to distinguish complete preemption under Section 502(a) of ERISA, which is used in this sense as a jurisdictional concept, from express preemption under Section 514(a) of ERISA, which is a substantive concept governing the applicable law." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). Although Section

514(a) preempts state law claims that "relate to" an ERISA plan, Section 514 simply

governs the law that will apply to the state-law claims, irrespective of the forum. 29

U.S.C. § 1144(a); *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2002). Therefore,

Section 514(a), standing alone does not confer subject matter jurisdiction. *See Joyce v.

RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997).

A defendant must first demonstrate that ERISA completely preempts a

plaintiff's claim before the court can assume jurisdiction. *In re U.S. Healthcare, Inc.*,

193 F.3d at 160. "ERISA's civil enforcement mechanism, Section 502(a), 'is one of

those provisions with such extraordinary preemptive power that it converts an

ordinary state common law complaint into one stating a federal claim for purposes of

the well-pleaded complaint rule' and permits removal." *N.J. Carpenters & the Trs.

Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citations

omitted).

Union Defendants contend that ERISA completely preempts Plaintiffs'

defamation claims such that they may be removed to federal court because the

alleged false statements made to employees concerning wages and benefits owed are

under an ERISA plan.[2] Applying the two-pronged *Pascack* test, the Court considers

(1) could the plaintiff have brought the claim under Section 502(a); and (2) does

_____

[2] Union Defendants allege that Sections 502 and 514 of ERISA preempts Plaintiffs'
claims in its Notice of Removal [Docket No. 1-1 ¶ 13] but fail to address this
argument in its opposition brief. Therefore, the Court assumes Union Defendants
have abandoned this argument. Nevertheless, the Court finds that ERISA is also not
a proper basis for removal of the present action.

another independent legal duty support the plaintiff's claim. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). With respect to the first prong, the Court considers: "(a) whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B), and (b) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, Civ. No. 17-536 (KM/MAH), 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017) (emphasis in original). With respect to the second prong of the *Pascack* test, "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.' " *N.J. Carpenters*, 760 F.3d at 303 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)).

Here, Plaintiffs do not assert a colorable claim for benefits. There is no challenge to the type, scope, or provision of benefits under an ERISA plan. Plaintiffs' Complaint merely refers to published allegedly defamatory statements to KN Electrical employees to "check their paystubs, KN isn't paying in benefits" and accused Plaintiffs of violating fringe benefit contribution plans. This is not sufficient to meet the requirements under ERISA § 502(a)(1)(B). *See S.M.A. Med., Inc. v. UnitedHealth Grp., Inc.*, No. CV 19-6038, 2020 WL 1912215, at *8 (E.D. Pa. Apr. 20, 2020) (holding that plaintiff's claims for damages arose out of alleged

misrepresentations and/or misinformation and did not derive from nor require interpretation of the language or terms of any patient's insurance claims).

Likewise, there are other legal duties that support Plaintiffs' defamation claim. Plaintiffs' defamation claim does not drive solely from the health plans administered or the benefits provided to employees under the plan, but were instead referenced in Union Defendants' allegedly defamatory publications. *See Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ), Inc.*, No. 15-CV-0254 SRC, 2015 WL 2371635, at *3-4 (D.N.J. May 18, 2015) (stating that "a state law claim may have an independent legal basis even if an ERISA plan is a factual predicate in the case") (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 512 U.S. 645, 656 (1995)). The Court finds that Union Defendants have failed to demonstrate that ERISA preempts Plaintiffs' state-law defamation claims.[3]

### C. Judicial Estoppel

In sum, Union Defendants' attempts to inject federal questions into Plaintiffs' complaint are without merit. Plaintiffs are the master of their complaint and have chosen to plead only state-law tort claims narrowly. *See Int'l Assoc. of Fire Fighters v. City of Atl. City N.J.*, No. 17-725, 2017 WL 548941, at *2 (D.N.J. Feb. 10, 2017).

---

[3] Moreover, Union Defendants argue that Plaintiffs' defamation claim requires the Court to interpret the CBA to determine the truth of the claims, an argument the Court rejected above. However, this assertion also runs contrary to the well-pleaded complaint rule. *See Caterpillar, Inc.*, 482 U.S. at 392 ("The existence or possibility of a federal defense, including a defense that relies on the pre-emptive effect of a federal statute, does not confer federal question jurisdiction.") Union Defendants are unable to point to any federal authority that would preempt of Plaintiffs' defamation claim.

Union Defendants cannot avoid state court by recharacterizing Plaintiffs' claims against them.

However, the Court also takes seriously Plaintiffs' repeated representations that the claims alleged in the Complaint have been narrowly-crafted to implicate only New Jersey tort law. Plaintiffs have also represented to this Court that they do not intend to bring a related cause of action against Union Defendant arising under federal labor law or ERISA in this lawsuit. Plaintiffs are the master of the Complaint, but at the same time, Plaintiffs should not be permitted to forum shop or create further delay in this litigation from proceeding on the merits. In light of Plaintiffs' representations that its claims are limited to the narrow state-law causes of action set forth in the Complaint, Plaintiffs will, no doubt, be judicially estopped by the New Jersey Superior Court from later asserting any related claim arising under Sections 301 or 303 of the LMRA, Section 8(b)(4) of the NLRA, or Sections 502 or 514 of ERISA.

## V. CONCLUSION

Neither federal labor law nor ERISA preempt any of Plaintiffs' claims arising under New Jersey tort law, and as such, Defendants have failed to meet their burden to establish a basis for this Court's federal question jurisdiction. Accordingly, removal is improper, and the matter must be remanded. An accompanying Order will issue.

<u>July 28, 2022</u>                               <u>s/Renée Marie Bumb</u>
Date                                                  Renée Marie Bumb
                                                      U.S. District Judge